Good morning. May it please the court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Mr. Medina, who is present in court. The government has conceded that the conviction in this case must be vacated because of instructional error. I'm going to focus my argument on whether a retrial is possible based on insufficiency. Mr. Medina was charged with bank fraud. Now there are two clauses to the bank fraud statute. He was charged under 18 U.S.C. 1344-2, which requires someone to obtain money or bank property by means of false representations or promises. We know that that requires two things. One, it requires false representations, and those representations must be the means of obtaining the bank property. The Supreme Court in Loeffner decided, made that clear last year, that there's a means test. Here, the evidence is insufficient with respect to both. One, there are no false promises of representations, and the government conceded as much when they, in conceding instructional error, the three counts charged were one count of depositing a check and two counts of wire transfer instructions. Under the case law, it's very clear to Williams and his progeny that none of those three actions constitute false promises under the statute. What do we make of the, or why should we conclude that there was no deceptive conduct in this case? It might bring it under 1344-2 as opposed to 1344-1, which the government might have wanted to consider when it brought this case. But why is Mr. Medina's use of the word correct, not deceptive? Well, it could have been deceptive, Your Honor, but that's legally irrelevant with respect to the charges under 1344-2. It's the wrong charge. It's the wrong charge. All right. Thank you. Why is it irrelevant? Yeah. Why is it irrelevant? It's irrelevant because it doesn't prove the element. It's not a false representation.  Not only his name at that time, after he acquired citizenship, his name was not the name that he applied to the accounts. It's not clear from the record that that's actually the case. There's no evidence of when- But the jury's entitled to draw inferences, but Judge Carter found that that was one of the elements that made this an embellished check-kiting scheme, right? And it doesn't have to be, I think, per se false as long as it's part of a fraudulent scheme, does it? That's correct under 1344-1. I think under Loeffner, though, there's some question as to whether there's such a thing as embellished check-kiting under 1344-2. And that's because Loeffner made clear that whatever- You want to talk about his name? Conceding for a second that that is false- His name is legally Tony Anderson. And also Antonio Medina. It was. Is there any law that says you can have two names at the same time? And it could have been- I think when you fill out your citizenship form, you're allowed to change your name then. You change your name. He's changed his name to Tony Anderson. And he's continuing to use this other name. Why can't that be decided- Why can't the jury conclude that's a false statement? It could, Your Honor. I think there's plenty of evidence that it isn't, but conceding that- Because I don't think that that is what this case revolves around. Whether that's a false statement or not, it still has to be the means of obtaining the bank property. Why the echo today, I don't know. So what we know from Loeffner, crystal clear, is that whatever you want to call a false statement or deceptive conduct has to be the means. It has to be the mechanism, the instrumentality for obtaining the property. And it's absolutely clear on this record that that is not the case. Whether he used two names, even though they're both his names, doesn't matter. That had nothing to do with obtaining the bank property. In fact, there's testimony in the record. The bank itself said that the funds go to the beneficiary bank. They don't care who the beneficiary is. Tony Anderson, Antonio Medina, Walmart, it doesn't matter. That had nothing to do with the charged offense. So that's actually a red herring. I think the government is grasping at straws here to try to save their prosecution. Under 1344-2, which requires false representations that are the means of obtaining the bank money that doesn't qualify in any universe. And that's the same analysis with respect to that other representation they threw out as false, and that is his instructions to recall the wire transfer. Again, that had absolutely nothing to do with what's at issue in this case. That, again, was not material. It's not an instrument. It's not by the means of. And whether you consider them false representations or not, I submit that there's plenty of evidence both ways on that. It doesn't matter because it still doesn't fit under the statute. This is really an easy case. I know I haven't been up here for very long, but honestly, as this court probably noted when it was reviewing it, Loeffner absolutely decides this case. It's very clear that whatever the government wants to call false representations weren't the means of obtaining the bank property. And I submit that whatever there is left to embellish check-kiting, there has to at least be that nexus. That nexus doesn't exist here. There's no evidence. What do we make of the fact that Mr. Medina's wire transfer recall was in an amount identical to the amounts listed on his checks and was completed almost contemporaneously with deposits of the checks? Again, if that's charged as a bank fraud scheme, that certainly might be some So whether it's suspicious or not, it's almost like improper character evidence in this case because we're going to smear him as someone who might plan to do evil to the bank, but that's not what was charged in this case. The government is stuck with what is charged, and they're the ones that drew up the indictment. They're the ones that charge the case. It's their prosecution. It's their burden to prove the elements. They just didn't do it in this case. Okay. Well, we'll hear from the government as to its theory as to why it did do it in this case. Thank you. Thank you, your honors. May it please the court. Vinh Batal on behalf of the United States. The government's evidence of false pretenses and representations was legally sufficient under this court's requirements for embellished check hiding, as stated in King, especially given the fact that this court must review the evidence in the light most favorable to the government. Moreover, the Supreme Court's recent decision in Loughran, a bank fraud case involving the passing of forged and altered checks at a target, only serves to support the government's position here. I first wanted to address briefly what happened in Loughran last year before the Supreme Court. Its primary holding there was that under subsection 2 of 1344, the government did not need to prove the intent to defraud the bank. There, the defendant was convicted of essentially passing checks he had obtained through mail theft, and he forged the signatures of the payers, as well as altering checks that had already had signatures on there. Similarly here, we have fraudulent use of checks. The fraud is on the checks themselves, as well as in the deposits that were done. But isn't this, counsel, excuse me for interrupting, this was check hiding, I could assume it was, but no money exchange was exchanged. No, Your Honor, in the sense that there was not a merchant involved here. That's one factual difference between here and Loughran. This wasn't an exchange where the defendant went to a retailer and used a check. But isn't that the big difference between this case and Loughran? Actually, yes, Your Honor, and I think to the extent there is a difference, I think we don't have some of the concerns that were present in Loughran, where we had this kind of indirect transaction with the bank. Here, we're clearly dealing directly with the bank, and I think that puts us actually in a better footing, arguably, than Loughran was in. In that case, because there was a question about whether a check being passed to a retailer is actually bank fraud because the check's not going to the bank. Here, the defendant actually went to the bank and deposited the insufficient funds check, but I wanted to focus on what was on those checks. On the checks themselves was a representation about who was making the deposit and who had authorized the check. It had been signed by Antonio Medina and basically saying that, I have a vouch for this check and stating that I'm authorizing this check. Putting aside whether the... Well, the account is in his name, so if he'd signed Tony Anderson, the check probably wouldn't have been honored. Yes, Your Honor, and I think that kind of supports our conclusion that this is a material false statement because if you'd put a different name on there... How is it false? His name, he naturalized and became Tony Anderson, and the jury had evidence to infer that he was no longer Antonio Medina. That was not his name. Is that correct? I mean, is there a law that says once you're naturalized, you can't... legally use your pre-naturalization name? Just for the court's knowledge, this wasn't before the jury, but one thing to note just to clarify kind of some background is he was actually naturalized as Tony Anderson, but his name originally was Antonio Puerta, so that wasn't even his name as a matter of fact, but what was before the jury was basically that he was using this name, Antonio Medina, throughout his proceedings with Citibank, and then when it came to this fraud, he sent proceeds in Tony Anderson, and I think this court in Halbert in discussing a mail fraud statute kind of addressed this issue squarely when it rejected the argument that someone who uses a false or assumed name and whether that itself is a material misrepresentation, and here, that's precisely what defendant did. But what? Did he use a false name? Your Honor, we would submit that... At a minimum, the jury could infer that it was an assumed name and that it was an alias, and that his alias was essentially part of his scheme to defraud. What we see is, we were looking at the evidence in the totality, is he's operating with Antonio Medina with both World Savings Bank and Citibank, and he uses that for the check-hiding scheme. When he goes to World Savings Bank, he shows up, he deposits an insufficient funds check from Citibank, 45 minutes later, he goes to Citibank, and he makes the exact same amount deposited using a World Savings Bank check. All of those transactions occur with the name Antonio Medina. But that had nothing to do with the falsity, because if he could have done precisely the same thing, if the account had been in the name of John Doe, and he signed as John Doe, the false name had nothing to do with the cross-depositive checks, did it? I mean, Citibank's willingness to extend certain funds to him on certain dates wasn't connected to the name he used, it was connected to him being the account holder. Your Honor, I would submit that it's, when we looked at the evidence that was submitted to the jury, there was evidence that, about how Citibank makes deposit funds available, there was testimony from a bank representative that discussed that they make, Citibank makes funds available when you're depositing a check based on your account record, how long the account had been open, and whether you had previous overdraws. I don't hear name on that list. Your Honor, we would submit that you could infer that, when you were talking about the account record, your account record would encapsulate your name, your representation when you sign up, that my name is Antonio Medina. But if he'd done that, I mean, your complaint about the falsity, I don't see how that's connected to Citibank's extension of, in effect, credit, letting him take advantage of the funds before they'd actually come over from the other bank. If he'd been John Doe, the same thing would have happened. If he'd been Tony Anderson, the same thing would have happened. Your Honor, I think you're getting to the materiality requirement, which we certainly had to prove of the false statements. I don't see how the false statement had anything to do with what the outcome was here. How was it material? Your Honor, I think in law firm, we saw that there was forged and altered checks. And there, you know, the same argument in theory could be made that they didn't look, the bank wouldn't look at the signatures. But clearly, that's part of the mechanism when a bank releases funds, that they look at the check and they verify that a signature's on there and it matches. Let's just make certain that the account holder is the person that signed the check. And I'm not dealing with arguments that, in fact, banks don't check that very carefully very often and so forth. Suppose he had used the name Tony Anderson throughout. If the account were in the name of Tony Anderson and he signs Tony Anderson, Citibank does exactly the same thing. I don't see how the falsity led to anything here. The question becomes when they sent the money to Spain, did the false name or the accurate but different name of Tony Anderson have any impact? And the evidence appears to be no, that Citibank would have sent it to anybody at the direction of the customer. So the use of the false name doesn't seem to connect up with the harm, with the criminal violation, and that's where Loughran seems to speak by saying there's a meaning to by Your Honor, I think when we look at this, we have to look at the total scheme. What the defendant was... So you tell me how the false name resulted in an injury that wouldn't have resulted anyway. Your Honor, I don't think that's the test. I don't think we're looking at necessarily... Then how is it material? It's material... materiality is merely the natural tendency or capable of influencing the Citibank. That's all materiality is. It's not reliance. The law is clear that we're not proving reliance by Citibank. That's distinguished... So you tell me how the false name had an impact. Your Honor, the defendant had been using that name for at least a year. That's what the jury had. He'd been using that name with Citibank and World Savings Bank. He had built up a track record with them of making legitimate deposits and legitimate withdrawals that went through and seemingly gave Citibank the appearance that this was the person that was reliable. And Tony... But how would that appearance have been any different if he'd used the name Tony Anderson throughout? Your Honor... I don't see how the false name had anything to do with the appearance of reliability. But I think that's getting to reliance. That's not getting to materiality. I think it's the same thing. If you can't show the false name didn't have an impact, then how is it a material? Your Honor, the law is clear that reliance is not materiality. What is materiality? It's a natural tendency to influence or is capable of influencing... And how did the name he used, Medina, influence Citibank's behavior? Your Honor, I would just submit that based on the account record and the history he used, this is akin to what was done in Laughlin where you're using essentially a forged or altered check and that he's using a name that he is not no longer. He is Tony Anderson. But we have other evidence here of false statements. The other place that we can see there's evidence of false statements is in the wire transfer recall that he did two days before executing the check cutting scheme. What happened in May of 2005 was the defendant essentially wire transfers money, $157,000, to his Forex Capital Markets account. What was false about that document? The statement in his recall, which was done seven months after the money was wired out, states, not according to instructions. Wasn't that filled out by the clerk? Your Honor, we had evidence that what happens is Citibank fills it out based on what the customer tells them. It tells them that, okay, I want to recall this wire because of X, Y, and Z, and it presents it to the customer. In this case, it's clearly shown that the defendant signed it. And we also had testimony in the civil proceedings that he admitted that he recalled the wire transfer. So there's no kind of dispute in the evidence that he was the one who recalled it based on And that was false because by September 2005, he had actually used all the money in foreign currency trading. And what does it have to do with anything? This is part of his scheme to defraud Citibank. He's doing it in multiple ways. But how did it connect up with, did it have any impact whatsoever on Citibank actually sending the two $50,000 wire transfers to the people in Spain? Your Honor, we would submit that this is That's a yes or no question. Did it have any connection with Citibank sending the $100,000 to Spain? Your Honor, we'd submit yes, it does. How? Because this is, again, part of his account record. And that's what Citibank stated is how they determine when they make funds available and when they do these wire transfers. So this is part of how Citibank is looking at his business and his business of using their banks. And it also, it's part of his scheme to defraud. This is one step in his scheme. He uses a bank account for a year under the name Antonio Medina. He does his wire transfer recall on December 21st. And then two days later, he goes and deposits these insufficient funds checks. And then he moves the money to his real name, Tony Anderson, in Spain. He clearly is using false statements in executing this scheme. That's all we have to prove, and that's all that's being contested in terms of sufficiency of the evidence. There's not a contention here that he didn't have an intent to obtain money or was acting fraudulently. And I think that's clear because there's no way that can be disputed here. He was clearly acting with fraudulent intent when he was doing this business. I might be prepared to stipulate, if I could, that he's got a violation of subsection 1. But I've got to say I'm having a lot of trouble finding a violation of subsection 2, and that's what he was charged with. Yes, Your Honor. We submit he was charged under subsection 2. We're not arguing under subsection 1. I did want to briefly address some things that were raised by counsel earlier. Our concession on the instruction really should have no effect on the decision on whether there's sufficiency of the evidence. Our concession there was basically that we were concerned the jury may have been confused that an insufficient funds check was a false statement. Clearly, under the Supreme Court's holding in Williams, that is not true. So we're not stating that our concession should go further beyond the instruction issue. And looking at Laughrin and whether it limits embellished check hiding, we would submit it doesn't. I mean, all Laughrin really said when it was discussing the by means of language was that there has to be something that would naturally reach the bank. And here we have evidence of two statements that we submit would naturally reach the bank. One, it's his name that he uses, Antonio Medina, which he signs on the checks, which he goes in and makes a wire transfer recall using that name. And the wire transfer recall itself, the statement that he is not according to instructions. But did he obtain anything from the bank? And that seems to be required by Laughrin. Did he receive anything from the bank? Bank property. Was anything transferred as it was in Laughrin? Your Honor, we would submit that yes, if actually he did receive money, I mean, he wired $100,000 out to Spain, but I don't think Laughrin actually goes that far and states that we have to show that he actually obtained the money, just that he had the intent to obtain the bank property. Clearly he had that intent by setting up this check scheme where he was essentially depositing insufficient fund checks in two different accounts. Here the bank lost $100,000, so there's no question that Citibank lost money because of this scheme. Unless the Court has any other questions, I would submit and say that the Court should affirm both the denial of the Rule 29 motion as well as the pre-indictment delay motion, and we would ask that the Court does reverse the convictions based on the instruction issue. I have a couple of almost housekeeping questions. Obviously the principal question here is the sufficiency of the evidence, but there are two possible scenarios. One is if we rule in your favor on that issue, then we're going to probably go to a new trial because you conceded that. So if we order a new trial, there are several other issues that's raised. Which one of those do you think need to be addressed? In other words, there's the issue of there's a motion to dismiss for pre-indictment delay, right? Does that still have to be addressed? Your Honor, that's the only other issue that the Court could address, and I would submit that I can briefly address that if the Court would like. No, no, you think we should address that? That would be the only one, Your Honor. What about the issue of the prior conviction? In other words, if we get to retrial, it's going to come up again, isn't it? The issue may arise, Your Honor. I think the defendant has conceded that there's no need for the Court to address that issue. The Court certainly can to give guidance to the district court on that issue. But I think as the defendant has stated, it may come up in a different context, a trial. We frankly don't know what will happen between now and then. So you're saying both sides agree that it doesn't have to be addressed? No, Your Honor. All right, thank you. Thank you. Mr. Tanaka. I heard the government's argument as essentially Mr. Medina did some things that didn't look so good and maybe tried to get the bank's money fraudulently, so there's sufficient evidence. But the analysis isn't that general. He was charged under 1344-2. So the issue is, is there sufficient evidence to convict him under 1344-2? I submit clearly there isn't. Whatever you want to say about what he did, there are no false representations here that were the means of attaining bank property, and that is the crux and essence of 1344-2. When the government says this case is just like law for an accepted... Why did he tell the bank that he should reverse or be able to reverse the wire transfer of the $157,000 sent to Forex some months before? Why did he bother to go in and say that to the bank? I don't know, Your Honor. Well, isn't that part of a scheme to improve his position with the bank, to get something out of them later? Well, it could be part of a scheme, but that's not sufficient. The scheme is the first part, and the second part is obtaining bank property by false representations. Well, couldn't that be characterized as part of the scheme to accomplish that? By going up, he's trying to tee it up so he can get away with the check-kiting that happened a few days later. Now, he may not know exactly what the bank does internally. It may be the bank internally isn't going to be affected by what he's reported about that wire transfer. But if he doesn't know what the bank looks to, why can't that be characterized as part of a scheme to accomplish what he sought to accomplish and did in fact accomplish, that is, get the $100,000 out of the bank and do his accounts in Spain? Because a scheme is not sufficient. You still need the false representations. They have to be the means of obtaining the bank property. But that's what I'm posing to you. The government has argued that by going into the Citibank and saying, give me back or reverse the wire transfer from last spring, I think it was retrieve that $157,000 from Spain because the instructions weren't properly followed. Maybe that was part of the fog bank he was trying to throw up to improve his prospects a few days later for getting the bank to approve the wire transfer. Now, it could be, indeed it appears to be the case, that the bank actually didn't connect those two things. But he doesn't know that. He's the fraudster. So why can't they be characterized as a part of a plan on his part, a scheme on his part to accomplish what he ultimately did accomplish, the $100,000 out of the bank? Because even if you consider those as false representations, they weren't the means or instrumentality of obtaining the bank property. Now, that's exactly the same thing you could say in any check-kiting case. We have a scheme. He's depositing a check here. He's depositing a check there. Then he writes a check before it doesn't clear. So there's a scheme. The reason the defendant gets off in those cases is that writing a bad check turns out to be under the law, not a false statement. But here we've got an alleged false statement. That is, going into the bank and saying, the $157,000 you sent out of my account several months ago, that was improper. You shouldn't have sent that out. Put that money back in the account. Reverse that wire transfer. Now, that is alleged by the government, a false statement on his part. Argued by the government, not alleged. But it suggests to me that, okay, the reason why the check-kiting cases don't constitute fraud, that doesn't help you here because here we do have an alleged false statement. Well, I assume that you could find something that's supposedly false. One, we're not conceding that's a false statement. But even conceding that it is, there are two huge problems with that under the statute of charge. You have to read the statute as written. One, as the court has explored with the government, it's not material. It wasn't capable of influencing the bank's action, and the testimony... But he may not know that. Well... He's the one putting... So look at the statute. But his intent is an issue with respect to materiality. He may knowingly attempt to execute a scheme to obtain money by means of false representations. Okay. It doesn't have to influence the bank. It just has to be capable of influencing the bank. That's right. And we know absolutely from the testimony of the bank representative that it wasn't capable, that they absolutely didn't consider that in deciding whether to credit his account. But he doesn't know that. And the statute covers not just successful efforts, but attempts to execute a scheme. Again, and I agree with the government that reliance isn't the same as materiality. We clearly don't have reliance here, and we also don't have materiality, because that statement, whatever he thought of it, wasn't capable of influencing the bank. It's an objective test. It's not subjective. It's not what he thinks. It's materiality is the statement objectively capable of influencing him. And we know from the evidence that it is not. Putting that aside, the major problem here is it wasn't the means of obtaining the thing. This had absolutely nothing to do with him obtaining the money. It was not the means. In Loughran, the check itself was the means of obtaining the money, and that's what distinguishes this case. That was a false check. We don't have a false check here. Any false statement that the government can conjure up now had nothing to do with him obtaining the money, and that's why their case fails. Well, 1344 says, whoever knowingly executes or attempts to execute a scheme or artifice, we go down to two to obtain monies, et cetera. I'd like to go back to Judge Clifton and ask, why isn't this a scheme which attempts to obtain the money of the bank? I would concede that it perhaps meets the first preamble to that, that is the preface to both sub 1 and sub 2. Yes. But as Loughran makes very clear, sub 1 and sub 2 define different offenses, though they're overlapping, and so then you have to go down to the rest of sub 2. So whether you have a scheme that's an attempt to obtain money, it still has to be by means of false representations or promises. And that false representation would be the statement that he made that he wanted the money back? OK, again, assume that's a false statement. That had nothing to do with him getting the money. It wasn't the means. There's no relational element, and that's exactly what Loughran tells us. That's the way Loughran limited sub 2 from swallowing up every fraud. There has to be a nexus. There's no nexus here. The evidence is insufficient. We thank you. Thank both counsel for your helpful arguments. The case just argued is submitted. That concludes the argument panel this morning.
judges: Nelson, Tashima, Clifton